# City of Auburn et al. *v.* State, ex rel. First National Bank et al.

[No. 20,908. Filed March 10, 1908. Rehearing denied June 4, 1908.]

1. Mandamus.—*Ministerial Duties.*—Mandamus lies to compel a public officer to perform a ministerial duty, only where there is no other adequate legal remedy. p. 528.
2. Contracts.—*Existing Statutes Form Part of.*—Existing statutes form a constituent part of all contracts entered into while such statutes are in force. p. 530.
3. Municipal Corporations. — *Street Improvements. — Engineer's Report.—Effect.*—The report of the city civil engineer that a street improvement has been completed, is not conclusive upon the common council; but such council must determine whether such work is completed according to contract. p. 531.
4. Same. — *Street Improvements.—Contracts.—Violation.—Acceptance.—Mandamus.*—Where a company contracted to make certain street improvements, and, failing to complete same, the city was compelled to employ and pay another company to complete the work, the assignee of the former company's contract and rights thereunder cannot, after the latter company's completion of the work, mandate the city civil engineer to report the work as completed, nor the common council to provide for the payment of the balance due on the original contract after payment to the other company for the completion thereof. pp. 531, 534.
5. Same.—*Street Improvement Contracts.—Divisibility.—Payment.* —A city contract for the construction of certain street improvements is not divisible, and payments thereon cannot be enforced upon completion of parts of the work. p. 532.
6. Same.—*Street Improvement Contracts.—Forfeiture.—Completion.*—Where a construction company contracted to make certain street improvements, and failed to complete same, the city, after giving notice to complete and the company refusing so to do, has the right to contract with another company to complete such

work, the original contract providing that the city may forfeit such contract where such company fails or refuses to perform the work. p. 533.

From Allen Circuit Court; *E. O'Rourke,* Judge.

Action by the State of Indiana, on the relation of the First National Bank of Chicago, against the City of Auburn and others. From a judgment for plaintiff, defendants City of Auburn and others appeal. *Reversed.*

*Walter S. Penfield, Walter Olds, N. D. Doughman* and *C. M. Niezer,* for appellants.
*Barrett & Morris,* for appellee city.

JORDAN, J.—This action was instituted by the State of Indiana on relation of the First National Bank of Chicago against the city of Auburn and the members constituting its common council and J. Frank McDowell, city engineer, and the Interstate Construction Company, to secure a writ of mandate to compel McDowell, as engineer, to report to the common council the completion of the work of paving and improving certain streets of the city of Auburn in accordance with a contract between it and the Interstate Construction Company, less the total cost of completing the improvements in question under a contract by the Barber Asphalt Paving Company and also to compel the city and the members of its common council to refer the matter of said work of street improvements to the city commissioners, and to fix a time and place for the meeting of said commissioners, and to compel said city to perform all other acts required by law to cause an assessment to be made upon the property benefited by the improvements made by the Interstate Construction Company.

The cause was originally commenced in the Dekalb Circuit Court, but subsequently was venued to the Allen Circuit Court. An alternative writ was issued, requiring appellant McDowell to report to the city the completion of certain work and improvements, and the total cost of the same

as if fully completed according to the original plans and specifications and the original contract between the city and the appellee Interstate Construction Company, less the total cost of completing the work under a contract by the Barber Asphalt Paving Company, and requiring the city of Auburn and the members constituting its common council to refer by resolution to the city commissioners the matter of said work and labor, and the improving of a portion of the streets and each of them, as done and improved by the Interstate Construction Company for the amount of said original contract price, less the amount allowed to the Barber Asphalt Paving Company for completing the same, and to fix a time and place for the meeting of the city commissioners, and to do and perform all other acts required of them by law, in order to cause an assessment to be made on the property benefited by the improvements made by the Interstate Construction Company, or to show cause why the same should not be performed.

The city of Auburn and its codefendants separately demurred to the alternative writ. These demurrers were overruled, and proper exceptions reserved. The city answered separately in three paragraphs, the first being the general denial. The second and third set up affirmative matter. The other defendants also filed separate answers.

On the issues joined the court found in favor of the relator; that the grading and paving of the streets in question, as provided for in the contract between the city of Auburn and the Interstate Construction Company, as set forth in the complaint, had been fully completed before the commencement of this action according to the terms of the contract and the plans and specifications for said work adopted by the common council of said city; that the total cost of all of said work under the price fixed by the contract was $61,784.72; that the total cost of repairing and completing the work, as performed by the Barber Asphalt Paving Com-

pany, so as to make the same conform to and be in accordance with such contract entered into by the Interstate Construction Company and the city of Auburn, is $49,680.45; that the relator, as assignee of the Interstate Construction Company, was entitled to receive and collect the sum of $12,104.27 for the work done by that company, and the court thereupon ordered and adjudged that a peremptory writ of mandate issue, commanding the defendant J. Frank McDowell, the city engineer of the city of Auburn, to report to the common council of said city the completion of the work of grading, paving, etc., and to estimate the total cost of the same at the sum of $61,784.72; that the total cost of the completion of the same by the Barber Asphalt Paving Company was $49,680.45; that the relator is entitled to a peremptory writ of mandate directing and commanding the city of Auburn and the common council thereof to refer to the city commissioners of said city by resolution the matter of grading, paving and improving said streets, and each of them, for the amount of said original contract price, as herein found, to wit, $61,784.72, less the amount of $49,680.45 allowed to the Barber Asphalt Paving Company for repairing and completing the work, to wit, the sum of $12,104.27; that the common council in said resolution fix the time and place for the meeting of the city commissioners, etc.

The city of Auburn separately moved for a new trial on the grounds: (1) that the finding of the court was not sustained by sufficient evidence; (2) that the finding of the court was contrary to law. The other defendants also filed their separate motions for a new trial. Each of these motions was overruled, and exceptions to the rulings of the court reserved. Appellants assign errors jointly and severally. The separate assignment of the city of Auburn is: (1) That the alternative writ of mandate does not state facts sufficient to constitute a cause of action; (2) that the Allen Circuit Court erred in overruling the demurrer

of the city of Auburn to the alternative writ of mandate; (3) that the Allen Circuit Court erred in overruling the city's motion for a new trial.

Briefly stated, the second paragraph of the answer of the city of Auburn to the alternative writ of mandate discloses that the declaratory resolution for the improvement of the streets in question did not specify the kind of pavements to be constructed. It sets out a copy of the contract, and alleges the conditions and terms thereof, and the nonperformance by the Interstate Construction Company, and avers that by its terms the city had a right to cancel the contract for nonperformance thereof by said company. It alleges that the work done in making said improvement was worthless; that the city did cancel the contract; that the contract provided for an acceptance of the improvement by the city engineer and the common council, and that said work of improvement had not been accepted by the engineer nor by the common council; that the certificate of the city engineer was obtained by fraud, and was not intended by him or by said construction company as an acceptance of the work; that the indebtedness of the city was and is in excess of two per cent of the assessed valuation of taxable property.

The third paragraph alleges the adoption of the declaratory resolution and the execution of the contract between the city and the Interstate Construction Company, which contract is made a part of the paragraph. It is averred that if the materials furnished and the work and labor performed had been in accordance with the contract, they would have amounted to $61,784.72. This paragraph charges the nonperformance of the contract, the nonacceptance of the improvements, the forfeiture of the contract by the city, and the resurfacing of the streets in question by the Barber Asphalt Paving Company at a cost of $49,686.45, and other expenses incurred and paid out by the city in the completion of the work, amounting to $467.15, making a

total of $50,153.60, expended in completing the work, or, in other words, in paving the streets as required by the contract between the city and the Interstate Construction Company.

On the trial of the cause the parties agreed upon a statement of facts which was to constitute the evidence in the case. Upon this statement of facts the cause was tried, which, as previously shown, resulted in a finding, awarding the relator a peremptory writ of mandamus, as hereinbefore stated. Consequently, as the facts stand undisputed, we may consider them and determine whether the relator is entitled thereon to the right or relief awarded it under the finding and judgment of the lower court.

Among the material facts as set forth in the statement are the following: The relator, the First National Bank of Chicago, is a corporation duly organized and created under and by virtue of the national banking laws of the United States, and is located and doing business in the city of Chicago, Illinois. The city of Auburn is a municipal corporation, duly created and organized under and by virtue of the general laws of the State of Indiana pertaining to the incorporation of cities. J. Frank McDowell was at the commencement of this action and prior thereto the duly appointed and acting city civil engineer of said city. The Interstate Construction Company is a corporation created and existing under the laws of the state of South Dakota. The other defendants in the case constitute the members of the common council of said city. On January 27, 1902, under the provisions of an act providing the mode and manner of making street improvements, etc., approved March 11, 1901 (Acts 1901, p. 534, §§3623a-3623h Burns 1901), the common council of the city of Auburn adopted plans and specifications, and duly passed a resolution by a two-thirds vote of all the members of said council, "declaring the necessity for the grading and paving of Main street from the north curb line of North street to the south curb of

Ensley avenue; of Cedar street from the south line of Seventh street to the south line of Ninth street; of Seventh street from the Ft. Wayne, Jackson & Saginaw railroad to the east line of Cedar street; of Ninth street from the west line of Cedar street to the east line of Main street, and for the curbing of said portions of said streets, and to widen the sidewalks at certain points along the same, said portions of said streets being then within the corporate limits of said city; and said resolution stated the size, kinds, location and terminal points of said improvements, and further provided that the paving of the portions of the streets was to be of brick, rock asphalt, sheet asphalt, block asphalt or creosoted block, as might seem the most advantageous and beneficial to said city and the citizens thereof from the proposals received for the doing of said work, but the grading, curbing and sidewalks should be of the kind and according to the specifications as set forth in the plans and specifications prepared by the city civil engineer of said city, and which has been duly adopted by the common council, and were then on file in the office of the city clerk of said city. Said resolution also directed that notice thereof, and the receipt of proposals and letting of the contract for the doing of said work, be given by publication for three weeks in the Auburn Daily Courier, a newspaper of general circulation, printed and published in said city. Which resolution so adopted was duly entered in the records of the council and signed and approved by the mayor.'' (The resolution is here set out.)

On March 27, 1902, a written bid and proposal of the Interstate Construction Company to perform the work in the making of said improvements was accepted by the common council, and the mayor on behalf of the city was authorized and empowered to enter into the proper contract with said company for the construction and completion of the work, and all the specifications were ordered to be made a part of the contract. Said company was required to en-

ter into a good and sufficient bond to the approval of the
common council prior to the commencement of the work, etc.
On April 2, 1902, the city of Auburn entered into a con-
tract with the Interstate Construction Company in regard
to making said street improvements.   By this contract said
company agreed to furnish all materials, tools and labor
necessary and incidental to complete the work contem-
plated to the full satisfaction and acceptance of the city
engineer and the common council on or before September 1,
1902, reference being made in the contract to the annexed
specifications which, together with the stipulations therein
contained, were to be considered as a part of the contract
as far as the same were applicable.   The contract then speci-
fied the extent of the improvements to be made in accord-
ance with the necessity resolution hereinbefore mentioned,
and provided that any imperfect work which might be dis-
covered before the completion and acceptance of the im-
provements should be corrected by the contracting company
or by the common council at the expense of said company.
It was stipulated that the contractor, or party of the second
part, meaning said construction company, should give the
work of improvement personal attention and should not
sublet all or any portion thereof, except by written consent
of the common council of said city, and that a failure to
comply with said requirements, or to prosecute the work as
therein required,

"either as to rate of progress or otherwise, shall be
deemed a sufficient cause for forfeiture at the option of
the common council, and any and all damages resulting
therefrom shall be paid by the contractor."

The contract is long and replete with stipulations and con-
ditions, hence we set out only such as we deem material in
the consideration of the questions presented.

The contract stipulated that

"it is expressly understood and agreed that said com-

mon council shall have the right to suspend the execution of this contract and to annul the same whenever, the party of the second part [the Interstate Construction Company] shall fail to prosecute the work at a satisfactory rate of progress or to comply with all and singular the terms and stipulations as herein set forth, and that such suspension or annulment shall not affect the right of the city or any abutting property owner upon said streets to recover any damages resulting from such default, as aforesaid. * * * Upon the faithful performance of the covenants and agreements as herein made by said second party said city of Auburn agrees to pay to said second party for the doing of said work as hereinbefore mentioned the itemized sums set out in second party's proposal as accepted by the city of Auburn in the resolution of acceptance of the common council thereof, and where the specific quantity of material or amount of work is not now ascertained and computed the same shall be computed by the city engineer, whose estimate thereof shall be final and conclusive. Said sums shall be paid, upon the completion of the work and the acceptance thereof, by bonds to be issued by the city of Auburn, based upon the assessments which are made liens upon the property benefited by said improvement, and in case the assessments so made by the city commissioners, in conformity to the statutes, shall be insufficient to pay the contract price thereof, then and in that case the residue shall be paid by the city of Auburn to the contractor in cash out of the general fund of the city; but the city of Auburn is hereby given the option of paying to said contractor in cash sums which may be due monthly during the construction of said improvement, as shown by the estimate of the city engineer, retaining therefrom a sufficient sum to cover the faithful execution of said work, and in case said city does exercise such option to pay the cash in the manner aforesaid, then said city shall be subrogated to the rights of the contractor to said extent to the bonds thereafter to be issued. It is agreed that the terms of this contract are not to be taken as revoking any terms in the plans and specifications or proposal, and that this contract is to be construed and read with said plans and specifications and proposals and acceptance thereof.''

This contract was duly signed on behalf of the city by the mayor thereof, as he was authorized to do by the com-

mon council, and by the Interstate Construction Company by and through its proper manager and attorney in fact.

By the provisions and specifications referred to and made a part of the aforesaid contract it was provided that, if any difference should arise between the parties as to the true meaning or intent of the plans and specifications for said improvements, or upon any question as to the material, workmanship, quantities or qualities, or any other question involving technical knowledge, the decision of the city engineer should be final and conclusive; and should said company as such contractor fail or refuse to prosecute the work diligently, then

"the common council shall have the right, upon thirty days' notice to such contractor, to prosecute the same to completion at the cost of said contractor."

It was further stipulated that at the close of each calendar month the city engineer should make an approximate estimate of the labor performed and materials furnished by the contractor for that month, and that eighty per cent thereof should be paid the contractor in city orders on or before the tenth day of the month following; that the final estimate should be made when the engineer decided that the work had been fully completed according to contract; and that the city should retain the remaining twenty per cent until the contractor should file the warranty bond with securities to be approved by the city council. Within sixty days after the execution of said contract the Interstate Construction Company entered upon the performance of the work in making said improvements, and fully completed the same according to its contract, plans and specifications before November 14, 1903, except the asphalt surfacing as hereinafter stated, and the time of the completion of said contract was extended by the common council in doing said work to the last-mentioned date. (Here in a brief statement of facts is set out in dollars and cents the amount of work

performed by the company, being a total of $61,784.72.) All of said work, excepting the surfacing of said streets with two-inch natural rock asphalt, was performed and completed according to the plans and specifications, and no part of said $61,784.72 has been paid to said construction company, or to the relator, or to any other person by the city of Auburn, or any of the property owners whose property is benefited by the improvement.

On November 14, 1903, an agent and manager of said construction company requested J. J. VanAuken, who was then, and during all the time of the doing of said work, the city civil engineer of said city, to give him a statement that said work had been done, stating the total cost thereof and the amount then due thereon, said agent stating to said Van-Auken at the time that such a statement would aid said construction company in securing other like work upon which it was then bidding. In response to this request VanAuken, on said date, made out and delivered to the agent of the construction company a report in the following words and figures. (Here follows the report in the statement of facts.) This report correctly stated the total cost of the improvements upon the streets, provided said surfacing with rock asphalt had been properly done and completed according to the contract; but the engineer did not intend that said statement should be an acceptance of the work of surfacing said streets with rock asphalt, nor did he ever file the same with the city, or authorize the agent of the construction company to file the same for him; but said agent, without his knowledge or consent, on November 16, 1903, filed said report with the city clerk. It appears that the common council, upon estimates made by the city civil engineer, ordered and directed that warrants be drawn by the mayor and city clerk, payable to the construction company, for the amounts of said estimate. With this direction of the common council the mayor

and clerk appear to have complied, and to have drawn and issued warrants upon the city treasurer and delivered the same to said construction company for the amounts set forth in the statement of facts. After receiving these warrants the construction company assigned them to the Federal Asphalt Paving Company, and this latter company assigned and indorsed them to the relator herein, the latter paying to the Interstate Construction Company and to said Federal Asphalt Paving Company the full face value of these warrants. The amounts of money evidenced by said orders were loaned and advanced by the relator to enable said Interstate Construction Company to perform the work of paving said streets, and the money so received was used for that purpose. Said sums of money remain due and unpaid from said construction company and from said asphalt company to the relator. Said sums of money as advanced and loaned amount in the aggregate to $43,847.

"By the terms of the specifications for natural rock asphalt, which specifications as hereinbefore shown were made a part of the contract, it was agreed and required that said wearing surface of said streets should be so composed and laid that when it became cooled to the atmospheric temperature it would be so firm that it would sustain the heaviest traffic thereon without marked impression, and of such tenacity that it would neither break, crumble nor pulverize with usage, and would not be affected by garbage, dirt or other organic substance that might accumulate upon the unfinished pavement; but the material used in the making of such surfacing of said streets was not so composed and laid that when it became cooled to the atmospheric temperature it would sustain the heaviest traffic thereon without marked impression, nor was it of such tenacity that it would not break, crumble nor pulverize with usage, but, on the contrary, it was brittle, cracked soon after it was laid, pulverized, and was wholly unfit for paving purposes, and worthless; and the common council of said city refused to

approve and accept said work, because said natural rock
asphalt surface was not in accordance with said contract and
the warranties made therefor. Said construction company
failed to construct the surfacing of the material in such a
manner as to comply with the terms of the contract. The
city, by and through its common council, thereafter adopted
new plans and specifications for the resurfacing of said
street with asphalt laid on the concrete foundation so con-
structed by the construction company, and on September 23,
1904, entered into a contract with the Barber Asphalt Pav-
ing Company for the resurfacing of said several portions of
said streets with Trinidad lake pitch asphalt, by the terms
of which contract the city required the Barber Asphalt Pav-
ing Company to remove all of the natural rock asphalt used
in surfacing said streets by said Interstate Construction
Company, and to relay and resurface said streets with Trin-
idad lake pitch asphalt on the concrete foundation so con-
structed by the Interstate Construction Company. Said
Barber Asphalt Paving Company agreed to do said work
and the city agreed to pay to said company therefor the
sum of $1.65 per square yard for the work of removing said
natural rock asphalt, and resurfacing and replacing the
same with said Trinidad lake pitch asphalt. The Barber
Asphalt Paving Company began said work, removed said
natural rock asphalt and replaced the same with Trinidad
lake pitch asphalt, and fully completed the same prior to De-
cember 5, 1904. And on said day said J. Frank
McDowell, the city engineer, reported to said common coun-
cil in writing that the work of the Barber Asphalt Paving
Company, under said contract, was fully completed accord-
ing to said contract, and the plans and specifications there-
for, and that the total cost thereof was $49,680.45. There-
after, on December 5, 1904, the common council by resolu-
tion, unanimously passed by all the members of said coun-
cil, accepted the paving and the resurfacing of said streets
as done and completed under said contract with the Barber

Asphalt Paving Company, and referred the same by resolution to the city commissioners to make report of the property benefited and the amount of benefits to each tract and parcel of land by the resurfacing of said streets by the Barber Asphalt Paving Company alone. When the resurfacing was so completed by the Barber Asphalt Paving Company, portions of streets so improved were in as good condition as they would have been if said surfacing with natural rock asphalt by the Interstate Construction Company had been done strictly and fully in accordance with the terms and within the contemplation of the contract between said city and the construction company. Said Trinidad lake pitch asphalt is a durable material and well suited for the surfacing of such streets and was well and properly laid. The defendant city kept and retained, and still keeps, retains and uses, and the public generally uses, all the balance of said work, labor and improvements (excepting only said natural rock asphalt used for surfacing as aforesaid) so furnished, made and performed by the Interstate Construction Company, all of which is well suited and adapted to the purpose for which constructed, and beneficial to said city and to the abutting property on said streets and other property in the immediate vicinity thereof, and so made and constructed in accordance with said contract between said city and the Interstate Construction Company. The city and said defendants, the members of its common council, and said defendant J. Frank McDowell, as city engineer, have failed and refused to accept the portions of said work so done and performed by the Interstate Construction Company, other than said natural rock asphalt surfacing, and said city engineer has refused, and said members of said common council have refused to require him to make any report thereon, or to report to said common council the total cost of the completion of said work of said improvements under the contract with the construction company in connection with the cost of resurfacing said streets by said Barber Asphalt Pav-

ing Company, or the total cost of doing all of said improvements at the prices agreed upon in said contract with said construction company, less the cost of taking up said surfacing and resurfacing said streets by said Barber company; and the defendants, members of said common council, have failed and refused to include said work, labor and improvements so done and performed by said construction company, together with said work and improvements so done by said Barber Asphalt Paving Company, at and for the total cost thereof at the price as fixed and agreed upon in the contract with said construction company, in reference to said city commissioners for an estimate and report to said council of the benefits to the property benefited by the doing of all of said work, though often demanded so to do before the commencement of this action by said relator and said construction company, but said council proceeded to and did refer to said city commissioners only the work and labor done by said Barber company, and thereafter caused an assessment to be made on the property benefited by said improvement only for the work and labor done on said streets by the Barber company, and said defendants, members of said council, also failed and refused to refer said work, labor and improvements so done by said construction company and for the total cost of doing all of said work and improvements at the price fixed and agreed upon in said contract with said Interstate Construction Company, less the cost of taking up and replacing said surfacing by the Barber Asphalt Paving Company as aforesaid, to said commissioners for a report and estimate of the benefits to the property benefited, if any, by said company, and to take any steps or action for the purpose of providing for an assessment of benefits on such property for or on account of said work, labor and improvements so made by said construction company, although they were often demanded so to do by both said relator and said construction company before the commencement of this action. The relator and said construction company only claimed that

the amount which they or either of them were entitled to receive or collect was the difference between the contract price as fixed and agreed upon in said contract with said construction company for all of said work and improvements, less the cost of taking up and resurfacing said streets by the Barber company, but said city and the members of said council claimed that nothing could be collected or received for said work and improvements so made by said construction company, and that said city and the members of said council had no duty to perform either in accepting said work or in providing for an assessment of such benefits therefor.''

It is shown by the facts that the defendants and owners of the property abutting on said streets had full notice and knowledge that such work was being done; but said owners of the property, with such notice and knowledge that their property would be benefited, stood by in silence without any objection on their part to the doing of said work.

The Interstate Construction Company, for value received, before the commencement of this action, to wit, on December 12, 1903, duly assigned, transferred and set over in writing to the relator all assessments to be made and all money, bonds and evidences of indebtedness due or to become due for or on account of the paving of said several portions of said streets. Notice of such assignment was duly served upon the city of Auburn prior to the demand and commencement of this action. The city of Auburn was at and before the time of entering into the contract with the Interstate Construction Company, and still is, indebted to an amount in the aggregate exceeding two per cent of the value of the taxable property within the corporate limits of said city, as ascertained and fixed by the assessment for city and county taxes for the preceding year.

On September 1, 1902, the time for the completion of said work of improvement expired. On that day the common council, by resolution, extended the time for the completion of the contract for the period of one month from said date.

On January 5, 1903, the common council adopted a resolution in the following words:

"Whereas the Interstate Construction Company has failed, neglected and refused to complete its contract with the city of Auburn, Indiana, for the paving with rock asphalt of Main, Seventh and portions of Ninth and Cedar streets, and whereas said Interstate Construction Company has not used reasonable diligence in the prosecution of said work, and has not done said work with proper material or in proper manner, in this that the asphalt already laid is a poor quality, poorly laid, and is rotten and unable to withstand traffic.    Therefore, be it resolved, that the mayor be instructed to communicate these resolutions to the Interstate Construction Company and the surety company on its surety bond and the guarantors of the contract."

On July 22, 1904, the common council passed a resolution in the following words:

"At a regular adjourned meeting of the common council of the city of Auburn, held in the council chamber of said city upon the above date, where were present Honorable Thomas H. Sprott, mayor of said city, all the members of the common council and the city clerk, and it being shown to the satisfaction of the common council of the city of Auburn that the paving contract heretofore entered into with the Interstate Construction Company for the paving of Main, Seventh, Cedar and Ninth streets in the city of Auburn has not been completed in accordance with the contract and the plans and specifications therefor, and that said paving so far as now done is a complete and utter failure, and it being further shown that a meeting was held between a committee of said common council, consisting of its mayor, councilman James W. Sheffer, the attorneys for the city, Daniel M. Link and Thomas R. Marshall, upon June 22, 1904, in the office of Newman, Northrup, Levison & Becker, in the city of Chicago, Illinois, when there were present representatives of the Interstate Construction Company, the Federal Asphalt Company and the National Surety Company, and it being further shown that all the parties to the conference having agreed that said work had not been completed in accordance with the plans and specifications therefor, and having further agreed that they would notify the common council of the city of

Auburn within three weeks therefrom as to whether or not they would complete the street paving contract in said city, and said time having elapsed, and said parties having failed to comply with the agreement either to notify the municipality that they would or would not complete said work, it is now ordered by the common council of said city that the contract heretofore entered into, for the paving of certain streets in said city, with the Interstate Construction Company be declared forfeited, unless work be commenced thereon within ten days therefrom, and thenceforward continuously prosecuted to completion, and unless such Interstate Construction Company furnishes the consent of the Federal Asphalt Company and the National Surety Company of New York that the original guarantee and bond shall remain in full force and effect until the full completion of said work to the satisfaction and approval of the common council of Auburn, and it is ordered that the city attorney send notice of this forfeiture in the following words to each of said companies, to wit:'' [Here is set out the notice, wherein, among other things, it was stated that, unless within ten days therefrom the company should proceed to complete the work to the satisfaction and approval of the common council of the city of Auburn, the city would proceed to relet the work in accordance with the plans and specifications theretofore adopted, and that no further notice of forfeiture would be given to said company.]

The statement of facts also sets out in detail the various steps taken by the city from and after the passing of the original necessity resolution for the improvement in question, and also the reletting thereof under contract to the Barber Asphalt Paving Company for the resurfacing of the streets.

It is true that the performance of a ministerial duty or function which, under the law, rests upon the common council of a city, may be enforced by mandamus by a person who, under the facts, is shown to be in a position to avail himself of that remedy. But in this case, as in others in which the aid of a writ of mandamus is invoked, the relator must show that it has a clear legal right to compel the performance of the specific duty demanded,

and that it has no other available and adequate remedy. But to authorize the issuing of the writ of mandamus, not only must it be made to appear that the petitioner has a clear legal right and that there is no other adequate remedy, but it must be shown that under the law it is the imperative duty of the defendants to do the act or acts, the performance of which is demanded. *Burnsville Turnpike Co.* v. *State, ex rel.* (1889), 119 Ind. 382, 3 L. R. A. 265; *Wood* v. *State, ex rel.* (1900), 155 Ind. 1, and cases cited; 19 Am. and Eng. Ency. Law (2d ed.), 725.

The right of the relator, under the facts, to prevail in this case must be tested by these well-settled principles. Turning to the act of 1901, *supra,* upon which the proceedings to improve the streets in controversy are based, it will be observed that section three of this act (§3623c, *supra*) provides as follows: "Upon the completion of such work, the city civil engineer shall report such fact to the common council and shall also report the cost of such improvement. The common council shall thereupon, by resolution, refer said matter to the city commissioners of said city and fix a time and place for the meeting of the city commissioners. * * * Such city commissioners shall meet at the time and place fixed by said common council and shall proceed to view the lots, lands and parcels of ground affected by said improvement, and shall within fifteen days thereafter file with the clerk of said city their written report, describing therein each lot, tract of land or parcel of ground benefited or damaged by said improvement, together with the name of the owner thereof. At the next meeting of the common council of such city such common council shall fix a time and place when and where such city commissioners will meet to assess the costs of said improvement upon the property benefited thereby in proportion to the benefits derived therefrom," etc.

Section six of the act (§3623f, *supra*) provides that "the

assessments, as made, together with the interest thereon, shall be a lien upon the several lots, tracts of land and parcels of ground to the same extent that taxes are a lien upon such property, and shall be collectible in ten equal annual instalments in the same way that taxes are collected." This section further provides for the issuing of bonds for the payment of the cost of such improvement.

The completion of the work is by the provision of §3623c, *supra,* made a condition precedent to the requirement that the engineer "shall report such fact to the common council," and that the latter body shall refer the matter to the city commissioners for the purpose of assessing benefits against the lots and parcels of ground beneficially affected by the improvement. This provision of the statute entered into and formed a part of the contract under which the work was let to the Interstate Construction Company. An examination of the contract in question discloses also that therein it was stipulated that the amount or sums to be paid to said company for furnishing the material and constructing the improvement "shall be paid, upon the completion of said work and acceptance thereof, by bonds to be issued by said city of Auburn, based upon the assessments which are made liens upon the property benefited by said improvement," etc. In fact, the contract in question discloses upon its face that it was the intention of the Interstate Construction Company to be controlled by the provisions of the statute under which the improvement was made.

It is clear that under the contract the payment to the contractor, for the work performed and materials furnished, by bonds based upon assessments made upon the property benefited, was conditioned upon the completion of the work and its acceptance as completed by the common council. Until the work was finished according to the provisions and stipulations of the contract under which it was let, the common council was not authorized or required

under the law to refer the matter to the city commissioners for the assessment of benefits. Under the statute no duty is imposed upon the city civil engineer to make the report mentioned in section three until the work is fully completed according to the contract. In passing it may be said that the report of the engineer is not conclusive upon the common council in regard to the completion of the work, but the duty devolves upon the council to determine whether the work has been completed as stipulated by the contract. By analogy upon this point the rule affirmed in *Studabaker* v. *Studabaker* (1899), 152 Ind. 89, may be said to obtain so far as applicable. Upon any view the cardinal question is, was the work in question completed by the Interstate Construction Company, the assignor of the relator herein, according to the provisions of the contract? That it was not is clearly shown by the facts conceded to be true by the parties. The material used in surfacing the streets "was brittle, cracked and pulverized soon after it was laid, and was wholly unfit for paving purposes and worthless, and the common council refused to approve and accept the work because the natural rock asphalt surface was not in accordance with the contract."

Certainly, in view of the failure of the Interstate Construction Company to carry out or perform on its part the contract in regard to surfacing the streets with the kind and character of material, and in the manner, specified and stipulated in the contract, it cannot be affirmed that it has performed and completed the work according to the contract. Consequently, neither the city nor its civil engineer owes any duty to the relator, as the assignee of the construction company, which is enforceable by writ of mandamus. A contractor, under the statute here involved, cannot force upon a city an unfinished job of street improvement, and thereby subject the property in the taxing district to the payment for such uncompleted work. The theory of the relator in this case apparently

is that the Interstate Construction Company having completed the improvement according to contract, except the asphalt surfacing thereof, and as that part of the job had been performed by the Barber Asphalt Paving Company under a contract with the city, and as the city had retained all of that portion of the work done by the Interstate Construction Company, therefore the amount of $49,680.45 paid, or to be paid, to the Barber Asphalt Paving Company for the work performed and material furnished by it, should be deducted from the $61,784.72, the price for which the Interstate Construction Company contracted to perform the work, and that $12,104.27, the difference between said amounts, should be awarded to the relator, and that the city, together with its proper officers, should be compelled by the mandate of the court to take the necessary steps under the statute to refer the matter to the city commissioners to make assessments against the property situated within the taxing district for the payment of the $12,104.27.    It must be remembered, however, that the work of improving the streets was let to the Interstate Construction Company under the contract as a unit or whole, and that the company could not perform the work in part, and then compel the city to refer the matter to the city commissioners for the assessment of benefits out of which to pay the expense of the improvement which had been completed only in part.    No such method is contemplated or authorized by the statute.    The city was not empowered, under the law, to receive and accept a part of the improvement as completed.    As previously asserted, the contract, and the law applicable thereto, fixed the rights and duties of the parties, and the court cannot create a contract different in its terms and provisions from the one executed by the parties.

By the contract it is expressly provided that the common council shall have the right to suspend the execution thereof

''and to annul the same whenever the party of the second part [the construction company] shall fail to prosecute the work at a satisfactory rate of progress, or to comply with all and singular the terms and stipulations as therein set forth. * * * And failure to comply with these requirements or to prosecute the work herein required, either as to rate of progress or otherwise, shall be deemed a sufficient cause for forfeiture at the option of the common council.''

The construction company, as shown by the facts, 6. was notified by the council that the work had not been completed. This company then agreed to notify the city within three weeks whether it would complete the improvement, but it wholly failed in this respect to comply with its agreement. The common council then declared the contract forfeited, unless the company commenced work looking to the completion of the improvement within ten days. The latter was notified of the action as taken by the council, but it did nothing further in regard to completing the job. The common council thereupon appears to have taken the necessary steps to let the work to the Barber Asphalt Paving Company. The Interstate Construction Company having failed to carry out its contract in regard to the improvement of the streets, it was competent for the common council to enter into a new contract with the Barber Asphalt Paving Company for the completion of the work left unfinished by said company. *Kemper* v. *King* (1881), 11 Mo. App. 116, 126.

No question of estoppel on the part of the city or the property owners of the taxing district can be said to be involved. It follows for the reasons herein given that the relator has not shown any legal right to compel the civil engineer and the common council of the city of Auburn to perform the acts demanded. Therefore it cannot maintain this action. Judgment reversed, with instructions to the lower court to grant appellants a new trial, and to render judgment upon the agreed facts in favor of the city of Auburn, its common council, and civil engineer.

## ON PETITION FOR REHEARING.

PER CURIAM.—Appellee, the relator herein, has petitioned for a rehearing, and endeavors to sustain its right thereto on substantially the same grounds as it advanced to uphold the judgment of the lower court. Its learned counsel argue that its right to a writ of mandamus should not be denied by the court so construing the statute of 1901, upon which the proceedings to improve the public streets in question are based, "as wrongfully to give the city the fruits" of the contractor's labor without compensation. At the former hearing appellants' counsel contended that this action was but a mere effort on the part of appellee, through the means of a writ of mandamus, "to collect a *quantum meruit* for work done under an uncompleted contract." This contention apparently is justified by the argument advanced by appellee's counsel upon the petition for a rehearing. Whether the defaulting contractor, the Interstate Construction Company, or the bank as its assignee, can recover against appellant city in an action at law upon an implied assumpsit for the amount of work done and materials furnished under the broken or unfulfilled contract is not the question, under the facts, with which we have to deal in deciding this appeal. Appellants insist that whatever remedy appellee had under its contract for securing payment for the work done and materials furnished in performing to completion the job of paving or improving the streets in question is, under the law, limited to the special assessments made upon the property benefited by the improvement. It is certainly evident that under the undisputed facts appellants owed appellee no duty which the latter in any sense had the right to enforce by mandamus. This question is the one presented and decided in this appeal. The proposition that the relator is not entitled to a writ of mandate we believe is so manifest that nothing further need be added in support of the original opinion.

Its right to recover generally against appellants, in an action at law, on a *quantum meruit* for the work performed and material furnished by the assignor, under the broken or unperformed contract, is a question not before us and consequently is not in any sense decided. Upon this point, however, the following cases, among others, may be consulted: *City of Detroit* v. *Michigan Pav. Co.* (1877), 36 Mich. 335; *Connolly* v. *San Francisco* (1893), (Cal.), 33 Pac. 1109.

*Howard* v. *City of Oshkosh* (1875), 37 Wis. 242, cited by appellee, is not in point under the facts in the case at bar and the law applicable thereto.

Petition overruled.