STATE of Indiana ex rel. J. N. S., INC., and Adult Arcade, Relators/Petitioners,

v.

MARION COUNTY MUNICIPAL COURT, Room 9, the Honorable Roy F. Jones, as Judge of Said Court, Respondent.

No. 279S53.

Supreme Court of Indiana.

Nov. 7, 1979.

Richard Kammen, McClure, McClure & Kammen, Franklin I. Miroff, Ancel, Friedlander, Miroff & Ancel, Indianapolis, for relators/petitioners.

Theo. L. Sendak, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for respondent.

PIVARNIK, Justice.

This is an original action that arose on the petition of Relators for a writ of mandamus against Respondent, seeking to have this Court direct Respondent to grant a change of venue to Relators. Oral arguments were heard on this application on February 20, 1979, at which time this Court indicated it would deny the petition for a writ. Briefing of this cause, however, was not completed until August 3, 1979.

This action arises from the preliminary stages of a potential prosecution for violation of the obscenity statute, Ind.Code § 35–30–10.1–1 *et seq.* (Burns 1979 Repl.). On January 4 and 5, 1979, the Indianapolis Police Department applied for a search warrant against the Adult Arcade and J.N.S., Inc. A search warrant was issued by Judge Roy F. Jones of the Marion County Municipal Court, Room 9. In executing the warrant, the police took possession of some of the books and records belonging to Adult Arcade and J.N.S., Inc. Pursuant to statutory procedure, Relators sought a prompt adversary hearing on the question of the probable obscenity of the material seized. On January 22, the court set a hearing for January 31 on this issue. On January 26, Relators filed a motion for a change of judge. This motion was taken under advisement by the court. On January 31, and February 7, the court heard evidence on the issue of probable obscenity. Relators argue they had a right to a change of venue from the judge on this issue. They were granted a continuance on further hearings on the probable obscenity issue until this question could be presented to this Court.

Relators' petition in the trial court for an adversary hearing on probable obscenity was based on Ind.Code § 35–30–10.1–6 (Burns 1979 Repl.), which states:

At any time after seizure, or the obtaining of evidence by purchase, and prior to trial, the state, defendant, owner, or

other party in interest of any matter seized or purchased, may apply for and obtain a prompt adversary hearing for the purpose of obtaining a preliminary determination of probable obscenity.

If evidence has been obtained by purchase, the court shall direct the clerk of the court to issue notice to the defendant informing him or her of the availability of a prompt adversary hearing prior to the issuance of an arrest warrant. If the court determines at said hearing that there is probable cause to believe that the matter is obscene, the matter shall be held as evidence, and an arrest warrant may be issued for the arrest of the defendant. Provided, further, if the defendant, owner, or other party in interest of any matter seized or purchased shall not apply for a prompt adversary hearing within five [5] days after seizure occurs or within seven [7] days after notice is issued by the clerk, an arrest warrant may be issued for the arrest of the defendant. In the case of films or motion pictures, at any time after seizure and prior to trial or any adversary hearing for the purpose of obtaining a preliminary determination of probable obscenity, the defendant or owner of any matter seized may apply for and, upon a showing that other copies of the film or motion picture are not available to be exhibited, the court shall order that the applicant be permitted to copy the film or motion picture at his own expense, so that showing can be continued pending a judicial determination of probable obscenity in an adversary hearing.

It is apparent at the outset that this procedure represents a departure from the normal procedures involved in bringing criminal actions and preserving evidence to be presented at trial. However, in spite of these differences in the method of controlling seizures and determining probable cause, *see Gerstein v. Pugh*, (1975) 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, it is equally clear that this section establishes a preliminary procedure which fits within the overall scheme of a criminal prosecution.

It was the intention of the legislature, in providing for this procedure in cases involving possible obscenity charges, to comply with the requirements of the First Amendment, as defined by the United States Supreme Court in *Heller v. New York*, (1973) 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745. In that case, police officers in a movie theater saw a film being shown which was described as sexually explicit. The prosecutor then requested a criminal court judge to view the film. Upon seeing the entire performance, the judge signed warrants for the seizure of the film, and the petitioners were arrested on the ground that the film was obscene, in violation of the New York penal code. The theater manager argued that seizure of the film without a prior adversary hearing violated the Fourteenth Amendment.

■ The Court in *Heller v. New York* noted in passing the necessary constitutional safeguards when there is a seizure of a large quantity of materials for the sole purpose of their destruction. In that situation, a prior judicial determination of obscenity and an adversary proceeding are required to avoid the "danger of abridgement of the right of the public in a free society to unobstructed circulation of nonobscene books." *A Quantity of Copies of Books v. Kansas*, (1964) 378 U.S. 205, 213, 84 S.Ct. 1723, 1727, 12 L.Ed.2d 809, 814. *See Marcus v. Search Warrant*, (1961) 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127. The Court in *Heller v. New York* stated: "Courts will scrutinize any large-scale seizure of books, films, or other materials presumptively protected under the First Amendment to be certain that the requirements of *A Quantity of Copies of Books* and *Marcus* are fully met." 413 U.S. at 491, 93 S.Ct. at 2794, 37 L.Ed.2d at 754.

■ The Court contrasted these standards with the constitutional safeguards which are required when a trial court is determining an issue pertaining to the seizure of films, books, and such materials as evidence for a contemplated prosecution. As the Court pointed out:

"[S]eizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film. *If such a seizure is pursuant to a warrant issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue and an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible.* In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise the film must be returned.

With such safeguards we do not perceive that an adversary hearing prior to a seizure by lawful warrant would materially increase First Amendment protection. *The necessity for a prior judicial determination of probable cause will protect against gross abuses, while the availability of a prompt judicial determination in an adversary proceeding following the seizure assures that difficult marginal cases will be fully considered in light of First Amendment guarantees with only a minimal interference with public circulation pending litigation.* The procedure used by New York in this case provides such First Amendment safeguards, while also serving the public interest in full and fair prosecution for obscenity offenses."

413 U.S. at 492–93, 93 S.Ct. at 2794–95, 37 L.Ed.2d at 754–55 [citations omitted; emphasis added]. Thus, it is clear that this extensive statutory procedure, which is based on *Heller v. New York, supra,* is designed for the protection of First Amendment rights, not to provide for a final determination of the obscenity issue.

■ To provide for the safeguards of the public interest enunciated above, our legislature enacted Ind.Code § 35–30–10.1–6 (Burns 1979 Repl.), *supra.* This section is one portion of the chapter in the criminal code which is directed toward the regulation and control of commercial exploitation of obscenity. The chapter also provides for criminal prosecution and penalty for its violations. The procedure established by § 35–30–10.1–6, then, is nothing more than a preliminary step in the bringing of a criminal action, and does not contemplate a "trial," either civil or criminal, from which a final judgment will come. This preliminary step has been added to the typical criminal process to insure protection of Relators' First Amendment rights. *Heller v. New York,* supra.

Relators claim that this statute sets up a procedure which gives them a right to a "trial" on the probable obscenity issue and therefore gives them a right to use all procedural vehicles available in a normal criminal proceeding, including changing venue from the judge. We do not agree. While the hearing on the issue of probable obscenity is adversarial and allows evidence to be heard from all interested parties, it is not a "trial" as such. The purpose of the statute is not to establish a procedure for *finally* adjudicating the rights of those involved.

■ Relators also assert in their brief that this statutory procedure may give rise to one judge becoming a censor for the entire community. They claim that if they have no relief from the jurisdiction of this judge, "he alone becomes the ultimate arbiter of what works will be available in the community." Therefore, they argue, unless they are allowed a change of judge at this juncture, their First Amendment rights will be violated. Under the procedure established by our legislature, Relators are mistaken in this argument.

The statute provides for this hearing to give the judge an opportunity to determine, only as a preliminary matter, whether there is probable cause to believe the materials are obscene. This procedure does not con-

template a *final* judgment or any *final* restraint on presumptively protected activity. *See Heller v. New York, supra.* No criminal charges have been filed. No arrests have been made. It is possible, irrespective of the outcome of the probable obscenity hearing, that no charges will be filed. The procedure in question is merely a preliminary hearing. In fact, the statute itself explains that the hearing is "for the purpose of obtaining a *preliminary* determination of probable obscenity." The trial judge who presides over the probable obscenity hearing, then, is not the "ultimate arbiter" who makes the final determination of the obscenity question. A final judgment by a jury on the question of obscenity will result only if a criminal charge is filed and Relators are forced to face criminal prosecution.

If a criminal action is, in fact, commenced, Relators will *then* have a right to a change of judge, as provided in Ind.R. Crim.P. 12, because they will then be facing a trial, with its potential for a permanent and substantial loss of liberty or property. In addition, we note that the language of Criminal Rule 12 also implies that the appropriate time to seek a change of venue is after a charge has been filed and a plea entered. That rule provides in part:

> "An application for a change of judge or change of venue from the county shall be filed within ten [10] days after a plea of not guilty, or if a date less than ten [10] days from the date of said plea, the case is set for trial, the application shall be filed within five [5] days after setting the case for trial."

There has been no wholesale seizure of Relators' property for the purpose of suppression or destruction. The samples of materials were taken only to be used as potential evidence in a contemplated criminal action. Because this is only a preliminary proceeding, and because the hearing may be adversarial and subject to the presentation of evidence from all interested parties, § 35–30–10.1–6, *supra*, we fail to see how allowing Relators a change of judge at this stage would meaningfully increase the protection of their First Amendment rights.

Since the Relators were not entitled, as a matter of statutory or constitutional law, to a change of venue at this point in the proceedings, the trial court acted within its discretion in denying their motion. Therefore, a writ of mandamus is denied.

All Justices concur.