STATE of Indiana ex rel. Richard DROST and Naked City, Inc., Relators,

v.

NEWTON SUPERIOR COURT and The Honorable Dennis Kramer, as Judge of said Court, Respondents.

No. 1180S427.

Supreme Court of Indiana.

March 3, 1981.

Richard Kammen, McClure, McClure & Kammen, and Franklin I. Miroff, Ancel, Friedlander, Miroff and Ancel, Indianapolis, for relators.

Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., R. Steven Ryan, Pros. Atty., Newton County, Kentland, for respondents.

PIVARNIK, Justice.

Relators, Richard Drost and Naked City, Incorporated, have petitioned this Court to issue a writ of mandate against the Newton Superior Court and the Honorable Dennis Kramer, as judge of that court. Essentially, relators challenge the adequacy of respondent Judge Kramer's compliance with statutory procedures relating to the seizure and preliminary judicial review of allegedly obscene materials. After the oral argument on this matter on November 24, 1980, this Court unanimously denied relator's request for a writ of mandate. This opinion is in furtherance of that decision.

On August 12, 1980, respondent Judge Kramer issued a search warrant authorizing police officers to search for and seize

"video tapes, films and photographs exhibiting any obscene performance and any photographs, films or video tapes presenting or exhibiting any obscene performance depicting or describing sexual conduct involving any person who is under sixteen (16) years of age; and, any video tape machines, and projection systems, screens, projectors, used to display, manage, produce, sponsor or exhibit such obscene performance."

The warrant recited that the search could cover "the lobby area and the bedroom known to be occupied by Richard Drost in the Round Gold Building located ... at Naked City in Roselawn, Indiana." Pursuant to this warrant, Indiana State Police officers seized over one hundred items from the described premises at Naked City. Most of these items were films or video tapes of an allegedly obscene nature.

■ The search for and seizure of these materials were made pursuant to Ind.Code § 35-30-10.1-1 et seq. (Burns 1979 Repl.). Section 35-30-10.1-5 states:

"Where the subject matter is offered for distribution to the public as stock-in-trade of a lawful business or activity, or, as in the case of films, is exhibited at a commercial theater showing regularly scheduled performances to the general public, no person shall be arrested for a violation of any of the provisions of this chapter unless the arresting officer shall have obtained an arrest warrant, and no property shall be seized as evidence unless a search warrant shall have first been obtained pursuant to the provisions of this title; Provided, however, that the quantity of materials seized shall encompass no more than is reasonable and necessary for the purpose of obtaining evidence."

In addition, § 35–30–10.1 6 states:

"At any time after seizure, or the obtaining of evidence by purchase, and prior to trial, the state, defendant, owner, or other party in interest of any matter seized or purchased, may apply for and obtain a prompt adversary hearing for the purpose of obtaining a preliminary determination of probable obscenity. If evidence has been obtained by purchase, the court shall direct the clerk of the court to issue notice to the defendant informing him or her of the availability of a prompt adversary hearing prior to the issuance of an arrest warrant. If the court determines at said hearing that there is probable cause to believe that the matter is obscene, the matter shall be held as evidence, and an arrest warrant may be issued for the arrest of the defendant. Provided, further, if the defendant, owner or other party in interest of any matter seized or purchased shall not apply for a prompt adversary hearing within five (5) days after the seizure occurs or within seven (7) days after notice is issued by the clerk, an arrest warrant may be issued for the arrest of the defendant. In the case of films or motion pictures, at any time after seizure and prior to trial or any adversary hearing for the purpose of obtaining a preliminary determination of probable obscenity, the defendant or owner of any matter seized may apply for and, upon a showing that other copies of the film or motion picture are not available to be exhibited, the court shall order that the applicant be permitted to copy the film or motion pictures, at his own expense, so that showing can be continued pending a judicial determination of probable obscenity in an adversary hearing."

Thus, under these statutes, if materials are seized pursuant to a search warrant, the defendant, owner or other party in interest is entitled to a prompt adversary hearing conducted for the purpose of obtaining a preliminary determination of probable obscenity. *See generally State ex rel. J. N. S., Inc. v. Marion Municipal Court*, (1979) Ind., 396 N.E.2d 361.

The record before us here reveals the following sequence of events. On August 15, 1980, three days after the search warrant was executed, relators petitioned for a prompt adversary hearing pursuant to § 35 30 10.1 6. The respondent court began these adversary hearings on August 19; however, the court did not complete its review on that day, and set the matter for continued hearing the next day. However, *relators* then requested a continuance. The court granted this request and reset the hearings for August 27 and August 28. Further hearings were held on those days, and the court then continued the matter to September 11 and September 12.

At some point before the resumption of the scheduled hearings, relators learned that Judge Kramer was not planning to be present at those hearings, but instead was planning to appoint a judge pro tempore to conduct the hearings in his absence. Relators, joined by the prosecutor, objected to this contemplated action; as a result, at *relators'* request, the hearings were continued and were rescheduled for October 28, 29 and 30. On September 15, relators filed an "Application for Return of Property and Renewed Request for Prompt Hearing." This pleading objected to the October 28–30 hearing dates and requested that respondent Judge Kramer resume the probable obscenity hearings immediately and contin-

ue to hold the hearings until the review of the evidence was completed. In response to this petition, Judge Kramer's record entry states that he had a schedule conflict from September 22 to October 10, and that he had rescheduled the hearings for the earliest possible resumption.

On October 15, respondent Judge Kramer entered an order confirming the October 28 and October 29 hearing dates, but continuing the October 30 hearing date because "the court has other matters that have to be heard on October 30, 1980." One week later, on October 22, the State requested a continuance of the October 29 hearing date due to the unavailability of one of its witnesses. The court granted this motion. The trial court's record further reflects that the probable obscenity hearings were resumed on October 28. At that hearing, relators renewed their request for "a prompt hearing" and the return of all confiscated items. Judge Kramer denied this motion and, at the close of that day's hearing, scheduled further hearings for November 26, December 2, December 3, and December 11. Thereafter, relators filed the petition for a writ of mandamus with this Court.

Relators argue that the statutory procedure has not been adequately followed by Judge Kramer, and that his method of disposing of this matter effectively denies them their First Amendment rights. Relators correctly assert that they are entitled to a prompt adversary hearing for the purpose of determining the probable obscenity of the materials seized pursuant to the warrant. They contend that, to adequately insure protection of their First Amendment rights, the respondent trial court must put aside all other matters, except criminal cases in which the defendant is exercising his right to a speedy trial, and conduct these adversary hearings in greatly expedited fashion. The respondent court, here, of course, has not taken such action. Relators conclude that respondent Judge Kramer lacks jurisdiction to conduct these adversary hearings except in the fashion and with the speed they suggest. On that basis, relators request that we issue a writ of mandamus against respondents, and order Judge Kramer to advance this matter on his calendar ahead of all other matters except criminal cases in which the defendant is asserting his right to a speedy trial.

■ On the basis of the facts before us, we are not persuaded by relators' argument. It is true, of course, that an action for a writ of mandamus will lie to force an official to perform a clear legal duty or to grant an unquestioned right to relief. *E. g., State ex rel. Burns v. Clay Circuit Court,* (1979) Ind., 393 N.E.2d 127, 130; *State ex rel. Sorrells v. Gibson,* (1968) 251 Ind. 225, 229, 240 N.E.2d 544, 546; *State ex rel. Winkler v. Marion Superior Court,* (1967) 248 Ind. 424, 428, 229 N.E.2d 648, 651. However, an action for mandate cannot be employed to adjudicate and establish a right or to define and impose a duty. *E. g., State ex rel. Rainey v. Bd. of Trustees, Ind. St. Teachers' Retirement Fund,* (1964) 245 Ind. 693, 699, 201 N.E.2d 564, 567; *State ex rel. Socony Mobil Oil Co., v. Delaware Circuit Court,* (1964) 245 Ind. 154, 159, 196 N.E.2d 752, 755. Relators' petition here essentially asks this Court to perform this latter task and define and impose a duty on respondent Judge Kramer.

■ We do not agree with relators' contention that Judge Kramer has a clear legal duty to conduct these hearings in the fashion they suggest or that he has jurisdiction to handle this matter only with the speed they deem appropriate. The United States Supreme Court's pronouncements on related obscenity questions have spoken of "prompt adversary hearings," but have refused to define or circumscribe this constitutional requisite with more specificity. *See Heller v. New York,* (1973) 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745; *United States v. Thirty-Seven Photographs,* (1971) 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822. Likewise, the applicable statute, § 35–30–10.1–6, speaks only in terms of a "prompt adversary hearing." Our decision here in no way detracts from a trial court's duty to conduct these adversary hearings on probable obscenity in prompt fashion. Respon-

dent Judge Kramer was and is under such a duty in this case. However, vigilant adherence to this principle does not require the establishment of specific time limits in which these hearings must be held. The vagaries of trial court caseload and scheduling problems mitigate against the establishment of a set of time limitations applicable to all cases, and, in fact, strongly suggest that the "prompt adversary hearing" principle can be meaningfully applied on only a case-by-case basis.

■ The circumstances of this case do not reveal the failure to perform a clear legal duty. Respondent Judge Kramer scheduled the first hearing for August 19, one week after the items were seized. The record also indicates that Judge Kramer scheduled subsequent hearings for the soonest, most convenient dates available on the court calendar, and, in fact, has proceeded to conduct hearings on those dates whenever possible. At the time relators filed their petition with this Court, four future dates had been selected and set aside for the purpose of holding these hearings. Thus, this is not a case which presents unaccounted-for delays, or in which the trial court has refused to conduct the necessary hearings and thereby effectively censored the items from community access without a judicial determination of probable obscenity. *Cf. Freedman v. Maryland*, (1965) 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649.

It is true that certain hearing dates were set aside and rescheduled for later times; however, two such continuances were brought about on relators' motion. This fact would seem to logically contradict relators' demand for immediate disposition of this matter. In any event, such delays clearly could not be charged to respondent Judge Kramer in determining whether he has discharged his duty to conduct prompt hearings. *Heller v. New York, supra.*

Finally, relators have not shown or even argued that this search and seizure has "prevented continuing exhibition" of copies of the seized materials. *Heller ˙v. New York, supra*, 413 U.S. at 491, 93 S.Ct. at 2794, 37 L.Ed.2d at 754. *See* Ind.Code

§ 35 30 10.1-6, *supra*. While certainly not dispositive of the question of whether the trial court is properly discharging his duty under First Amendment principles and our statutory procedures, we believe this is a factor which must be considered in analyzing relators' argument that Judge Kramer's alleged lack of promptness has operated to deny them their First Amendment rights. *See Heller v. New York, supra; Freedman v. Maryland, supra. Cf. Vance v. Universal Amusement Co., Inc.*, (1980) 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413.

■ Relators have implicitly suggested that the State and/or respondent Kramer brought about this administrative dilemma by the seizure of such a large quantity of exhibits. We might be inclined to agree, as a general proposition, that it would have been better judgment to pursue this matter in a different fashion. However, where no constitutional or statutory violation has been shown, it is not our task to review discretionary decisions of this type, especially in the context of the reviewing of a petition for extraordinary relief.

We conclude that, so long as it is readily apparent that the trial court is not avoiding its constitutional and statutory duty and is conducting the necessary hearings in "prompt" fashion, the court has discretion to decide exactly when—and the frequency with which—the hearings must occur. The record here does not reveal a failure to discharge a clear legal duty; likewise, we decline to establish a right of relators to have these hearings advanced on the court's calendar above all other matters, save criminal cases, and a concomitant duty on respondent Judge Kramer to conduct these hearings in this fashion or within a specified or predetermined amount of time. *See State ex rel. J. N. S., Inc., supra.* For these reasons, relators' petition for a writ of mandamus is denied.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.