ATTORNEYS FOR APPELLANT
Kenneth J. Falk
Gavin M. Rose
ACLU of Indiana
Indianapolis, IN

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Frances Barrow
Andrea Rahman
Matthew R. Elliott
Deputy Attorneys General
Indianapolis, IN



FILED
08/28/2017, 3:30 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

———————————————————

No. 49S05-1705-PL-285

MARY PRICE,

*Appellant (Plaintiff),*

v.

INDIANA DEPARTMENT OF CHILD
SERVICES; DIRECTOR OF INDIANA
DEPARTMENT OF CHILD SERVICES,

*Appellees (Defendants).*

———————————————————

Appeal from the Marion Superior Court, Civil Division 1, No. 49D01-1507-PL-23062
The Honorable Heather A. Welch, Judge

———————————————————

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1602-PL-380

———————————————————

**August 28, 2017**

**Slaughter, Justice.**

Judicial mandate is an extraordinary remedy—available only when the law imposes a clear duty upon a defendant to perform a specific, ministerial act and the plaintiff is clearly entitled to that relief. The law at issue here, Indiana Code section 31-25-2-5, imposes strict caseload limits for family

case managers at the Indiana Department of Child Services. This statute compels a particular outcome—no case manager can oversee more than seventeen children at a time who are receiving services—but does not require the Department to perform one or more specific, ministerial acts for achieving it. Thus, the statute is not amenable to a judicial mandate. We affirm the dismissal of Plaintiff's complaint.

## Factual and Procedural History

Plaintiff, Mary Price, works for the Department of Child Services as a family case manager. Her job requires that she monitor and supervise active cases where the Department has been presented with evidence that a child is suffering from abuse or neglect. Such children and their families are entitled to receive various services from the Department, including, but not limited to, protective services, abuse/neglect prevention, and family-preservation services. These services are intended to ensure a child's safety and promote family stability. See Ind. Code §§ 31-25-2-7; 31-25-2-11(b), (c) (Supp. 2015).

Our legislature imposes staffing thresholds to ensure family case managers such as Price have manageable caseloads. Under the governing statute, Price's ongoing-services caseload cannot exceed seventeen children.

> Sec. 5 (a) The department shall ensure that the department maintains staffing levels of family case managers so that each region has enough family case managers to allow caseloads to be at not more than:
>
> > (1) twelve (12) active cases relating to initial assessments, including investigations of an allegation of child abuse or neglect; or
> > (2) seventeen (17) children monitored and supervised in active cases relating to ongoing services.
>
> (b) The department shall comply with the maximum caseload ratios described in subsection (a).

Id. § 31-25-2-5 (Supp. 2015). To help the legislature track compliance with these caps, the Department must submit yearly reports "provid[ing] data and statistical information regarding caseloads of family case managers." Id. § 31-25-2-4. If caseloads exceed the statutory limits, the Department must provide "a written plan that indicates the steps that are being taken to reduce caseloads". Id. § 31-25-2-6(4).

Price filed a proposed class-action lawsuit in July 2015 alleging her caseload had ballooned to forty-three children—more than twice the statutory cap. Her claim, which is based on Section 31-25-2-5, names the Department and its director as defendants and seeks an "order mandating or enjoining [D]efendants to take all necessary steps to comply with [Section 5]." Defendants moved to dismiss Price's complaint on two grounds: lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. The trial court dismissed the complaint under Rule 12(B)(6) for failing to state a claim. A divided Court of Appeals reversed as to the mandate. Price v. Indiana Dep't of Child Servs., 63 N.E.3d 16 (Ind. Ct. App. 2016). The Department then sought transfer, which we granted. Because the sought-after class has not yet been certified, we resolve only Price's claim.

## Standard of Review

A 12(B)(6) motion to dismiss tests the legal sufficiency of the complaint. The rule requires that we "accept as true the facts alleged in the complaint." Trail v. Boys and Girls Clubs of Northwest Indiana, 845 N.E.2d 130, 134 (Ind. 2006) (citation and brackets omitted). We review 12(B)(6) motions de novo and will affirm a dismissal if the allegations "are incapable of supporting relief under any set of circumstances". Thornton v. State, 43 N.E.3d 585, 587 (Ind. 2015) (citation omitted). We also will affirm a dismissal if the decision "is sustainable on any basis in the record." Id.

## Discussion and Decision

Before turning to the merits of Price's request for mandate, we briefly address subject-matter jurisdiction. The Department invoked Rule 12(B)(1) in its motion to dismiss, but did not thereafter argue that ground for dismissal to any court. Lack of jurisdiction cannot be waived, and we would be obliged to address it ourselves without prompting if jurisdiction were absent. Suffice it to say, the Marion Superior Court, as a court of general jurisdiction, is empowered to hear Price's mandate action and, were such relief warranted under applicable law and facts, to order it. See Ind. Code § 33-29-1-1.5 (Supp. 2015). See also Mishler v. County of Elkhart, 544 N.E.2d 149, 151 (Ind. 1989) (stating presumption that courts of general jurisdiction have subject-matter jurisdiction). It goes without saying that a court's power to award relief and a claimant's entitlement to relief on the

3

merits are very different things. We hold the trial court properly exercised jurisdiction here. It follows that our jurisdiction, which derives from the trial court's, is secure.

On the merits, we hold that Price is not entitled to the extraordinary remedy of a judicial mandate. Under our mandate statute and case law interpreting it, such relief is available only to compel a specific, ministerial act, and only if the plaintiff is clearly entitled to that relief. Price seeks to compel the Department (and its director) to comply with the strict caseload requirements set forth in Section 31-25-2-5. But this statute requires only a particular outcome—caseloads cannot exceed seventeen children per case manager—and does not require the Department to take specified steps to achieve that outcome. Thus, the statute is not susceptible to a judicial mandate to compel compliance with its terms. In addition, we reject Price's argument that Section 5 gives her a private right of action to enforce the statute's caseload limits. The Court of Appeals held that Price had no private right of action because Section 5 was intended to benefit the public generally and not particular individuals. Price, 63 N.E.3d at 22. We agree and summarily affirm that conclusion. We thus affirm the dismissal of Price's complaint under Rule 12(B)(6).

**I.**      **A judicial mandate will issue only when the law imposes a clear duty on the defendant to perform a specific, ministerial act and the plaintiff is clearly entitled to that relief.**

Price styles her complaint as an action for mandate under Indiana Code section 34-27-3-1 (2014 Repl.), which provides:

> Sec. 1. An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any:
>
> (1) act that the law specifically requires; or
> (2) duty resulting from any office, trust, or station.

As an aside, we doubt the Department itself (as opposed to its director) is a proper defendant to a mandate action, given the various definitions of "person" under Section 34-6-2-103. Cf. Couch v. State ex rel. Brown, 169 Ind. 269, 273, 82 N.E. 457, 459 (1907) ("In order to enable the court to enforce its mandate, or administer the proper penalty for disobedience, it is necessary that the *officials* derelict in performance of duty should be proceeded against personally.") (emphasis added). But Defendants did not raise this argument, so we will not address it.

Casting aside our doubt, we observe the mandate statute dates to the nineteenth century and tracks its antecedents almost verbatim. State ex rel. Reynolds v. Board of Comm'rs of Tippecanoe Cty., 45 Ind. 501, 503 (1874) (prevailing statute instructed that mandate may be issued "to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specifically enjoins, or a duty resulting from an office, trust, or station"). Then, as now, the statute did not provide examples of when courts could issue mandate orders; rather, courts had to decide whether mandate was appropriate on a case-by-case basis, using the relevant statutes and applicable mandate case precedent as guides. Id.

### A.    Indiana law harbors a strong presumption against judicial mandates.

Our precedent cautions against issuing a mandate, calling it "an *extraordinary* remedy, viewed with *extreme* disfavor." State ex rel. Civil City of South Bend v. Court of Appeals of Indiana – Third Dist., 273 Ind. 551, 553, 406 N.E.2d 244, 245 (1980) (emphases added). See State ex rel. Drost v. Newton Super. Ct., 275 Ind. 297, 302, 416 N.E.2d 1247, 1250 (1981) (citing statutory mandate standards in original-action case); State ex rel. Reiman v. Kimmell, 212 Ind. 639, 648, 10 N.E.2d 911, 915 (1937) (citing original-action standards in statutory mandate case). Judicial mandate is appropriate only when two elements are present: (1) the defendant bears an imperative legal duty to perform the ministerial act or function demanded and (2) the plaintiff "has a clear legal right to compel the performance of [that] specific duty." City of Auburn v. State ex rel. First Nat. Bank of Chicago, 170 Ind. 511, 528-29, 83 N.E. 997, 1003 (1908). See also State ex rel. Winkler v. Superior Court of Marion County, Room No. 3, 248 Ind. 424, 428, 229 N.E.2d 648, 651 (1967). These two elements represent the "narrow limits" placed upon judicial mandates. State ex rel. Hunter v. Winterrowd, 174 Ind. 592, 595-96, 91 N.E. 956, 958 (1910) (stating that "[c]ourts have generally been unwilling to extend" mandate beyond cases where the "petitioner . . . shows a clear legal right to the thing demanded, and an imperative duty on the part of the respondent to do the act required"). These strictures mean that judicial mandate should "never [be] granted in doubtful cases." Burnsville Turnpike Co. v. State ex rel. McCalla, 119 Ind. 382, 385, 20 N.E. 421, 422 (1889) (citation omitted).

5

**B.      A mandate's duty element requires that the defendant have a legal obligation to perform a specific act.**

It is not enough for the law to impose a generalized duty. To be subject to a judicial mandate, the law must impose a specific duty to act—i.e., a duty to "do" or "perform" something. For example, in State ex rel. Mann v. Jaberg, 238 Ind. 460, 151 N.E.2d 505 (1958), we explained that a judicial mandate may issue only where there is "a clear and legal duty resting on the defendant[] to *do* and *perform* the thing demanded". Id. at 506 (citation omitted) (emphases added). There, the relator sought a mandate for the defendant to void transfers of property between townships, even though the applicable statute merely required the defendant to "correct any errors". Id. at 505-06; id. at 508 (Arterburn, J., dissenting). We denied the mandate, in part, because "there [was] no clear legal duty resting on [defendant] to perform the function which relator-appellant [sought] to have performed." Id. at 507. See also State ex rel. Socony Mobil Oil Co. v. Delaware Cir. Ct., 245 Ind. 154, 162-63, 196 N.E.2d 752, 756 (1964) (denying judicial mandate, in part, because "the facts presented to us show no clear legal duty resting on the respondents to perform the things demanded by Socony"); Reiman, 212 Ind. at 648, 10 N.E.2d at 915 (refusing judicial mandate when law did not impose "clear legal duty . . . to do and perform the things demanded"); Winkler, 248 Ind. at 428, 229 N.E.2d at 651 (denying mandamus directing lower court to comply with Supreme Court Rule that did not impose clear duty to act).

As we discuss next, a mandate commanding general compliance with a statute to achieve a certain outcome, without identifying the specific act required, is no mandate at all—because it leaves the defendant with discretion to fulfill the required outcome. If the defendant has discretion, there is no clear, absolute duty to perform a specific act—without which there can be no mandate.

**C.      The specific act to be mandated must be ministerial—affording the respondent no discretion in discharging the legal duty.**

When there is a clear legal duty to perform a specific act, the act must also be ministerial. "It is generally stated that mandamus may issue in a proper case to compel the performance of a ministerial act." Ellingham v. Dye, 178 Ind. 336, 404, 99 N.E. 1, 25 (1912). See also Knutson v. State ex rel. Seberger, 239 Ind. 656, 658, 157 N.E.2d 469, 471 (1959) ("[T]he law is also well established by a long line of decisions that public officials, boards and commissions may be mandated to perform ministerial acts where there is a clear legal duty to perform such acts."). A

6

ministerial act is non-discretionary—"one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done." Flournoy v. City of Jeffersonville, 17 Ind. 169, 174 (1861).

A ministerial act does not necessarily arise from a statute's use of mandatory language; more is required. When the legislature says "shall", it issues a *legislative* mandate. But that does not mean—and we do not presume—the legislature thereby commanded a specific, ministerial act amenable to a *judicial* mandate. Examples of ministerial acts that a court can lawfully mandate include: rule upon a permit application, Indiana Alcoholic Beverage Comm'n v. State ex rel. Harmon, 269 Ind. 48, 50, 379 N.E.2d 140, 142 (1978); approve a subdivision plat, Knutson, 239 Ind. at 663-64, 157 N.E.2d at 473; pay a salary, Noble Cty. Council v. State ex rel. Fifer, 234 Ind. 172, 189, 125 N.E.2d 709, 718 (1955); and pay a judgment, Gary Mun. Airport Auth. Dist. v. State ex rel. Air Cont'l Flying Ass'n, 488 N.E.2d 1156, 1158 (Ind. Ct. App. 1986).

> **D.** **The specific, ministerial acts subject to judicial mandate are to be determined solely from the law imposing the duty, and courts cannot impose a mandate remedy different than what is specified in the applicable law.**

Courts do not have license to define or prescribe a duty to act. The requirement of a specific, ministerial act leaves no room for judicial improvisation regarding the underlying legal duty. Because ministerial acts are those done only pursuant to law, in a fixed manner, in specific circumstances, and without discretion, they necessarily cannot be elaborated upon. See Flournoy, 17 Ind. at 174. See also Winterrowd, 91 N.E. at 958 (denying judicial mandate commanding building inspector to issue permit because there was no pre-existing, clear legal duty to act, and mandate order would have to create or ascertain the duty); Drost, 275 Ind. at 302, 416 N.E.2d at 1250 (denying judicial mandate directing lower court to comply with statutory procedures when relator "essentially asks [the] Court to . . . define and impose a duty on [the] respondent"). Thus, a court cannot expound upon what particular act a duty compels; it can only command performance of an existing duty required by law.

**II.     Judicial mandate is not proper here because Section 31-25-2-5 does not compel the performance of a specific, ministerial act.**

Price does not quarrel with the specific-act requirement for mandate actions. But she claims her petition seeks nothing more than the specific, non-discretionary act that she believes Section 5 commands—namely, compliance with statutory caseload limits. The flaw in Price's argument is that her premise is wrong—Section 5 does not require a specific, ministerial act.

It is not enough that Section 31-25-2-5 speaks in mandatory terms, e.g., "department *shall* ensure" and "department *shall* comply". I.C. §§ 31-25-2-5(a), (b) (emphases added). To be susceptible to a judicial mandate, Section 5 must also compel the performance of a specific act, not just a specific outcome. The statute does not spell out how the Department is to comply with the caseload caps. By failing to outline what specific actions the Department must take to meet caseload requirements, Section 5 affords the Department wide latitude in complying with them. Section 5, therefore, is not amenable to judicial mandate.

In contrast, elsewhere in Chapter 31-25-2 the legislature outlined mandatory, specific acts the Department "shall" perform: submit reports with required information, id. §§ 31-25-2-4, -6; provide notice of, and access to, photographs, x-rays, and physical medical-examination reports, id. §§ 31-25-2-12, -13; establish citizen-review panels, id. § 31-25-2-20.4; provide a list of names and birth dates to the state department of health, id. § 31-25-2-22; establish a permanency roundtable, id. § 31-25-2-23(a); establish a residential placement committee, id. § 31-25-2-23(b); and submit an annual child-fatalities report, id. § 31-25-2-24. To be clear, we do not hold that these other Chapter 2 provisions are necessarily amenable to a judicial mandate. We merely note that these other provisions refer to specific acts, in contrast to Section 5, which imposes generalized obligations of *ensuring* caseload limitations and *complying* with caseload ratios.

Even Price appears to acknowledge as much. She recognizes the Department has broad discretion to comply with caseload ratios. Her verified complaint did not identify a specific act to be mandated; she sought merely an "order mandating or enjoining defendants *to take all steps necessary to comply* with Indiana Code § 31-25-2-5." Although she seeks a mandate to force the Department's compliance with caseload ratios, her brief recognizes the Department's discretion in accomplishing

8

that goal: "How DCS does this is, of course, ultimately up to DCS." Price's acknowledgment underscores our conclusion that the statutory cap is an outcome not susceptible to a judicial mandate.

Despite this recognition, Price nevertheless argues issuance of a mandate here is consistent with our precedent in Gushwa v. State ex rel. Oster, 206 Ind. 237, 189 N.E. 129 (1934). There, a state statute required that a township trustee "shall establish and maintain . . . a high school" upon the petition of a specified number of parents if the township's assessed property values reached a particular threshold and there was not already a high school within a specified distance. Id. at 130. After these conditions precedent were satisfied but the trustee still took no action, the trial court issued a mandate commanding the trustee "to take such and all of the necessary steps" to establish and maintain a high school in the township. Id. This Court affirmed, noting the statute left the trustee with "no choice" and "no discretion" but to build the high school. Id. We hold that Gushwa does not govern here, for three reasons.

First, Gushwa did not recite—and did not observe—our longstanding legal standard for issuing judicial mandates. Second, no case in Indiana (or elsewhere) has even mentioned, let alone followed, Gushwa in the eighty years since it was decided. And, third, we have not found (and the parties have not cited) another case since Gushwa authorizing issuance of a mandate to compel such an open-ended set of tasks. We need not overrule Gushwa expressly to observe it is an outlier inconsistent with our mandate precedent.

Although Price cannot proceed with her mandate action, she may still seek relief through Indiana's civil-service complaint procedure. See I.C. § 4-15-2.2-42 (2016 Repl.). Of course, we express no opinion on what specific relief Price may be entitled to obtain. The parties agreed the administrative process would be futile for the class, but not for individual family case managers. Price and the other case managers aggrieved by the Department's allegedly unlawful caseload assignments may always seek individual redress administratively.

\*        \*        \*

Our mandate precedent draws a line between "acts" and "outcomes": acts are subject to mandate; outcomes are not. But a rigid "acts"-versus-"outcomes" dichotomy oversimplifies things. The test really is not binary at all—an either/or determination. We recognize that sometimes an

outcome *is* a discrete act, e.g., approve the plat. But many outcomes are not. In reality, outcomes lie along a continuum. At one end are legal obligations that can be discharged with a simple, discrete act—and are subject to mandate: issue the warrant, release the inmate. At the other end are those obligations requiring discretion and often multiple acts over an extended period of time to fulfill—and are not subject to mandate: raise an army, feed the hungry. Unlike these extremes, most obligations (including the caseload cap at issue here) lie somewhere in the middle. Determining which obligations fall into which camp is not always black and white. We think the best yardstick for resolving this question is the extent and nature of judicial oversight required to ensure compliance with the underlying obligation. Weighing in favor of mandate are those matters requiring little or no judicial time or expertise. Militating against mandate are those matters requiring more oversight, expertise, and that are not readily susceptible to a simple directive to attain compliance. Here, Section 31-25-2-5 does not specify the acts to be performed to effectuate the legislature's caseload-ratio cap. And granting relief here risks entangling the judiciary in the Department's day-to-day affairs—what would likely be a time-consuming intrusion beyond our institutional competence to discharge. We conclude this legal obligation lies along that portion of the continuum not amenable to a mandate.

## Conclusion

For these reasons, we affirm the dismissal of Price's complaint.

Rush, C.J., and David, Massa, and Goff, JJ., concur.