



FILED
Feb 28 2024, 8:48 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Amanda Peters, as Natural Parent of Isabelle Meyer, Deceased,

*Appellant-Plaintiff*

v.

Girl Scouts of Southwest Indiana, Inc., Girl Scouts of the United States of America, Inc., Benjamin Brassard, and Cynthia Meyer,

*Appellees-Defendants*

---

February 28, 2024

Court of Appeals Case No.
23A-CT-1342

Appeal from the Perry Circuit Court

The Honorable M. Lucy Goffinet, Judge

Trial Court Cause No.
62C01-2007-CT-279

---

**Opinion by Judge Tavitas**
Judges Pyle and Foley concur.

**Tavitas, Judge.**

## Case Summary

[1] In this interlocutory appeal, Amanda Peters ("Mother") appeals the trial court's dismissal of Benjamin Brassard ("Father") and Cynthia Meyer ("Grandmother") from a Child Wrongful Death Statute ("CWDS") action brought by Mother against the Girl Scouts of Southwest Indiana ("Girl Scouts").[1] The trial court dismissed Father's and Grandmother's claims based upon their failure to file claims within the two-year period prescribed by the CWDS, but Mother argues that the trial court abused its discretion by doing so. We conclude that Father and Grandmother failed to file timely claims, and accordingly, we affirm.

## Issue

[2] Although Mother raises multiple issues, we address the following dispositive issue, which we restate as whether Father's and Grandmother's claims were untimely under the CWDS.

## Facts

[3] The facts here are undisputed. Eleven-year-old Isabelle Meyer tragically died on June 24, 2019, after a tree fell and struck her at a camp operated by the Girl

---

[1] In November 2022, Mother settled her CWDS claim against the Girl Scouts of the United States of America, Inc. Girl Scouts of the United States of America, Inc., was thereafter dismissed from the action with prejudice by the parties' agreement in February 2023 and is not a party to this appeal.

Scouts in Perry County. At the time, Grandmother and her husband, Stanley Meyer, were the court-appointed guardians of Isabelle.

[4] On July 10, 2020, Mother, as natural parent and personal representative of Isabelle's estate, filed a complaint against the Girl Scouts pursuant to the CWDS. The trial court later granted Mother's motion to amend the complaint to remove references to Mother as personal representative.

[5] In October 2020, the Girl Scouts filed a motion to dismiss Mother's action due to Mother's failure to join a party needed for just adjudication under the CWDS and Indiana Trial Rule 19. The Girl Scouts argued that Mother failed to join Father in the CWDS action, that Father was an indispensable person, and that the action was subject to dismissal as a result of Mother's failure.

[6] In response, on November 17, 2020, Mother requested permission to file a second amended complaint to add Father as a defendant in the action, pursuant to the CWDS, which the trial court granted. Service was not perfected upon Father until July 2021; Father filed an answer on August 9, 2021. The trial court then denied the Girl Scouts' motion to dismiss.

[7] On June 8, 2022, Mother requested permission to file a third amended complaint to add Grandmother as a defendant in the action due to her guardianship of Isabelle; the trial court granted the motion.[2] Grandmother

---

[2] Grandmother's husband was co-guardian, but he was not added to the action.

never filed an answer to the third amended complaint and has never appeared in the action. On July 8, 2022, the Girl Scouts filed a motion to dismiss Grandmother. The Girl Scouts argued that: (1) Grandmother is not an appropriate defendant under the CWDS; (2) Grandmother failed to make a claim within the two-year statute of limitations; and (3) Mother's addition of Grandmother as a defendant long after the statute of limitations expired did not preserve Grandmother's claim. Mother responded that Grandmother's claim was allowed under the CWDS and that Grandmother's claim was not subject to the statute of limitations because Mother's complaint was timely filed.

[8] The Girl Scouts then filed a motion to dismiss Father in August 2022. The Girl Scouts argued that Father failed to timely assert his claim pursuant to the CWDS because he did not pursue an action himself and did not file his answer to Mother's complaint until forty-six days after the statute of limitations expired. Accordingly, the Girl Scouts argued that Father's claim under the CWDS should be dismissed. In response, Mother argued that Father's claim was derivative of Mother's claim and that it was, thus, timely.

[9] On May 5, 2023, the trial court granted the Girl Scouts' motions to dismiss Father and Grandmother. Mother filed a motion to certify the order for interlocutory appeal under Indiana Appellate Rule 14, which the trial court granted. We accepted interlocutory jurisdiction, and Mother now appeals.[3]

---

[3] We held oral argument in this matter on January 24, 2024. We thank counsel for their presentations.

## Discussion

### I. Standing

[10] Before addressing the issues raised by the parties, we must note our concerns with the odd procedural posture in this case. Below, Grandmother did not enter an appearance in this action, and Father filed only an appearance and answer. Neither Father nor Grandmother responded to the motions to dismiss. Father and Grandmother are automatically parties to this appeal pursuant to Indiana Appellate Rule 17(A). Neither, however, has filed an appearance or presented arguments on appeal.

[11] Although the order at issue dismissed Father and Grandmother, the Notice of Appeal was filed by Mother's counsel. Throughout the Appellant's Brief, Mother identifies herself as the Appellant, but all of Mother's arguments on appeal relate to the dismissal of Grandmother's and Father's claims; none of the arguments on appeal relate to Mother's claims. We note that the standing doctrine "focuses on whether the complaining party is the proper person to invoke the court's power." *Campbell v. El Dee Apartments*, 701 N.E.2d 616, 621 (Ind. Ct. App. 1998). "The standing rule bars litigants from asserting the right or legal interests of others in order to obtain relief from injury themselves." *Id.*; *see also Hoosier Contractors, LLC v. Gardner*, 212 N.E.3d 1234, 1238 (Ind. 2023) ("Indiana law is clear that standing requires an injury, which is met if the party shows it ha[s] suffered or [is] in immediate danger of suffering a direct injury as a result of the complained-of conduct.") (internal citations and quotations

omitted). Accordingly, it is unclear how Mother can assert the rights or legal interests of Father and Grandmother in this matter.

[12] As for the absence of an appearance for Father or Grandmother in this matter, at the oral argument, Mother's counsel asserted that he also represents Father and Grandmother. *See Peters v. Girl Scouts of Southwest Indiana, Inc., et al.*, 23A-CT-1342, Jan. 24, 2024 Oral Argument at 4:23, 6:03. Counsel's appearance in this appeal, as shown in part below, however, does not indicate that he represents Father or Grandmother.

**APPEARANCE BY ATTORNEY**

Party Classification: Initiating: **X**    Responding: _____    Intervening:____

1.    The undersigned attorney and all attorneys listed on this form now appear in this case for the following party member(s): **AMANDA PETERS, as Natural Parent of ISABELLE MEYER, Deceased**

*Id.*, June 15, 2023 Appearance by Attorney.[4] In her Reply Brief, Mother asserts that "there is no impropriety associated with [Mother, Father, and Grandmother's] determination that their interests are best advanced collectively at this stage of the proceedings . . . ." Appellant's Reply Br. p. 10. It is unclear, however, how counsel could represent Mother—the plaintiff—and also

---

[4] Given counsel's appearance for Mother only, we are perplexed by counsel's statement at oral argument that he represents Mother, Father, and Grandmother.

represent Father and Grandmother—who are defendants in this litigation. *See* Ind. Prof. Conduct Rule 1.7.[5]

[13]  We acknowledge that we have allowed one party to present arguments regarding the dismissal of another party where the first party is prejudiced by the dismissal. *See Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 88 (Ind. Ct. App. 2018) ("As a general matter, the dismissal of a co-defendant from a case subjects remaining defendants to greater potential liability, which creates sufficient prejudice to confer standing upon a co-defendant to appeal such a ruling.") (internal quotation marks omitted), *trans. denied*. We also acknowledge, as the Girl Scouts have pointed out, that "some confusion" exists regarding the CWDS statute. Appellee's Br. p. 16. Accordingly, to the extent

---

[5] This Rule provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) **the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal**; and

(4) each affected client gives informed consent, confirmed in writing.

Prof. Cond. R. 1.7 (emphasis added).

Mother is somehow prejudiced by the dismissal of Father and Grandmother from the action, we will address the arguments presented on appeal.

## II. Standard of Review

[14] Mother's arguments relate to the rights of Father and Grandmother, whom the trial court dismissed from the underlying suit upon the Girl Scouts' motions. A motion to dismiss under Indiana Trial Rule 12(B)(6) tests the legal sufficiency of the complaint. *Price v. Ind. Dep't of Child Servs.*, 80 N.E.3d 170, 173 (Ind. 2017). We "accept as true the facts alleged in the complaint." *Id.* We review motions to dismiss de novo, and we will affirm a dismissal if the allegations "are incapable of supporting relief under any set of circumstances." *Id.* We also will affirm a dismissal if the decision "is sustainable on any basis in the record." *Id.* "A motion to dismiss for failure to state a claim on which relief may be granted is an appropriate means of raising the statute of limitations." *William F. Braun Milk Hauling, Inc. v. Malanoski*, 192 N.E.3d 213, 217 (Ind. Ct. App. 2022).

[15] Moreover, the parties' arguments require this court to interpret the CWDS. "When interpreting an unambiguous statute, we accord words their plain meaning." *Ind. Off. of Util. Consumer Couns. v. S. Ind. Gas & Elec. Co.*, 200 N.E.3d 915, 919 (Ind. 2023). When reviewing an ambiguous provision in a statute, the "primary goal is to determine, give effect to, and implement the intent of the Legislature with well-established rules of statutory construction." *Id.* "[W]e do not presume that the Legislature intended language to be used in a statute to be applied illogically or to bring about an unjust or absurd result." *Id.* "The

CWDS must be strictly construed because it is in derogation of the common law." *Johnson v. Harris*, 176 N.E.3d 252, 256 (Ind. Ct. App. 2021), *trans. denied*.

### III. Father and Grandmother were required to file claims, and they failed to do so in a timely manner.

The trial court dismissed Father and Grandmother because they did not file claims before the two-year time constraint for filing a CWDS claim expired. "[A]ny CWD[S] claim must be brought no later than two years of the date of death; that is what the plain language of the statute provides." *Ellenwine v. Fairley*, 846 N.E.2d 657, 666 (Ind. 2006). Like the Wrongful Death Act, the CWDS "creates an enforceable right of action, 'unknown to the common law,' only if commenced within the prescribed timeframe" and "the statute is regarded as a non-claim statute." *Brugh v. Milestone Contractors, LP*, 202 N.E.3d 1091, 1095 (Ind. Ct. App. 2023) (quoting *Blackford v. Welborn Clinic*, 172 N.E.3d 1219, 1224 (Ind. 2021)) (discussing the Wrongful Death Act), *trans. denied*. As with the Wrongful Death Act, the two-year period under the CWDS "is not a statute of limitation but a condition precedent to the existence of the claim." *Alldredge v. Good Samaritan Home, Inc.*, 9 N.E.3d 1257, 1261 (Ind. 2014).

"While 'statutes of limitation create defenses that must be pleaded and may be waived,' a non-claim statute is self-executing and 'imposes a condition precedent to the enforcement of a right of action.'" *Blackford*, 172 N.E.3d at 1225 (quoting *Bahr v. Zahm*, 37 N.E.2d 942, 944 (Ind. 1941)). If a party fails to file a claim within the prescribed time, "no enforceable right of action is

created." *Id.* Thus, although the parties refer to the two-year period as a statute of limitations, it is actually a condition precedent to the existence of a claim.

[18] Here, Isabelle died on June 24, 2019; Mother filed her action on July 10, 2020, well within the two-year time constraint. Mother added Father as a defendant in November 2020, but service was not made upon Father until July 2021. Father did not file an answer until August 9, 2021. Accordingly, although Father was added as a defendant well within the two years, service of the complaint and his answer were not made until after the two-year time constraint expired. As for Grandmother, she was not added as a defendant until June 2022, well after the two-year time period, and she has never answered or filed an appearance in this litigation.

[19] Mother, however, argues that neither Father nor Grandmother were required to "bring a claim" to be entitled to an apportionment of damages under the CWDS. Appellant's Br. p. 12. Because they were not required to bring a claim, Mother argues that "it necessarily follows that their failure to do so within two years of Isabelle's death does not estop their right to [a] damages apportionment arising from a claim timely brought and maintained by [Mother]." *Id.* at 13. Thus, according to Mother, the CWDS does not require a parent or guardian named as a defendant to file an answer in order to receive an apportionment of damages. Rather, Mother claims that such parties would only need to assert their claims in some form prior to settlement or a trial. Under Mother's argument, if Mother's claim was timely, the two-year time

constraint would never bar Father's and Grandmother's apportionment of damages.

[20] Mother's argument requires an interpretation of the CWDS, codified at Indiana Code Section 34-23-2-1, which provides:

> (c) An action may be maintained under this section against the person whose wrongful act or omission caused the injury or death of a child.  **The action may be maintained by**:
>
>> (1) **the father and mother jointly, or either of them by naming the other parent as a codefendant to answer as to his or her interest**;
>>
>> (2) in case of divorce or dissolution of marriage, the person to whom custody of the child was awarded; **and**
>>
>> (3) **a guardian, for the injury or death of a protected person**.
>
> (d)  In case of death of the person to whom custody of a child was awarded, a personal representative shall be appointed to maintain the action for the injury or death of the child.
>
> * * * * *
>
> (i)  **Damages** awarded under subsection (f)(1), (f)(2), (f)(3)(C), and (f)(3)(D) **inure to the benefit of**:
>
>> (1) the father and mother jointly if both parents had custody of the child;

> (2) **the custodial parent, or custodial grandparent, and the noncustodial parent of the deceased child as apportioned by the court according to their respective losses**; or
>
> (3) a custodial grandparent of the child if the child was not survived by a parent entitled to benefit under this section.
>
> However, a parent or grandparent who abandoned a deceased child while the child was alive is not entitled to any recovery under this chapter.

(Emphasis added).

[21] Only one action for Isabelle's death is allowed under the CWDS. *See, e.g.*, *Hanna v. Ind. Farmers Mut. Ins. Co.*, 963 N.E.2d 72, 77 (Ind. Ct. App. 2012) ("Pursuant to the CWD[S], it is apparent that the parents of a minor child can maintain a single, joint claim for the death of their minor child. In other words, nothing in the statute permits each parent to maintain a separate wrongful death claim in his or her own right."), *trans. denied*. Thus, where, as here, one parent has filed a CWDS action, the statute requires that the other parent be added as a "codefendant to answer as to his or her interest." *See* Ind. Code § 34-23-2-1(c)(1).

[22] Here, Mother added both Father and Grandmother as defendants. The Girl Scouts complain that the CWDS does not allow a guardian to be named as a codefendant. We acknowledge that the CWDS does not require the guardian—here, Grandmother—who may also maintain an action, to be added as a

codefendant. Although the CWDS **requires** a parent to add the other parent as a codefendant, we conclude that nothing in the CWDS **prevents** the parent from also joining the guardian as an indispensable party under Trial Rule 19.[6] A guardian could also file a motion to intervene[7] pursuant to Indiana Trial Rule 24.[8]

---

[6] We noted in *City of Terre Haute v. Simpson*, 746 N.E.2d 359, 364 (Ind. Ct. App. 2001), *trans. denied*, that:

> [T]he [CWDS]'s parental joinder provision is analogous to the joinder provisions under Trial Rule 19, under which actions are subject to dismissal if an indispensable person needed for just adjudication is not joined in the action as a party. As under Trial Rule 19, an individual parent asserting a claim under the [CWDS], while having standing to maintain an action, must join the deceased child's other parent as a party or face dismissal of the action for failure to comply with the plain requirements of the statute.

(footnote omitted).

Despite the comparison in *Simpson* between the CWDS and Indiana Trial Rule 19, we note that Indiana Trial Rule 19 addresses the joinder of indispensable parties and provides, in part: "If [an indispensable party] has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant." Thus, under the CWDS, the parent not bringing the action must be added as a "codefendant," but Trial Rule 19 requires that the parent be joined as a "plaintiff" or a defendant if he or she refuses to be joined as a plaintiff. Accordingly, under Trial Rule 19, Mother should have joined Grandmother as a plaintiff or a defendant if she refused to be joined as a plaintiff.

Although not raised by the parties, the differences between the CWDS and Trial Rules raise concerns that portions of the statute conflict with our Trial Rules. Our Supreme Court has held that if a statute is a "substantive law, then it supersedes [our Trial Rules], but if such statute merely establishes a rule of procedure, then [our Trial Rules] would supersede the statute." *Church v. State*, 189 N.E.3d 580, 588 (Ind. 2022). "We have long held that laws are substantive when they establish rights and responsibilities, and laws are procedural when they 'merely prescribe the manner in which such rights and responsibilities may be exercised and enforced.'" *Id.* (quoting *State ex rel. Blood v. Gibson Cir. Ct.*, 157 N.E.2d 475, 478 (Ind. 1959)). Because the parties do not raise the issue, however, we do not address it further.

[7] The difference between joinder and intervention has been described as follows:

> "Joinder" is a method by which one may be compelled to become a party whereas "intervention" is a method by which an outsider with an interest in a lawsuit may come in as a party on their own application. . . . The only difference between intervention of right and joinder is which party initiates the addition of a new party to the case.

59 Am. Jur. 2d Parties § 144 (footnotes omitted).

[8] Although not at issue here, confusingly, a "guardian" may maintain an action under the CWDS, but a "guardian" is not entitled to an apportionment of damages. Similarly, a "custodial grandparent" is entitled to an apportionment of damages, but a "custodial grandparent" may not maintain an action unless the

[23] Despite the addition of Father and Grandmother as parties to the litigation, Mother argues that it was unnecessary for Father and Grandmother to file a claim in the action until the case was ready for settlement or trial. Mother's argument, however, is inconsistent with our basic trial rules and procedures. We are aware of no authority for the proposition that a party claiming damages from the defendant may simply show up any time before settlement or trial and assert a right to damages.

[24] To the contrary, Indiana Trial Rule 4(A) provides that "[t]he court acquires jurisdiction over a party or person who under these rules commences or joins in the action, is served with summons or enters an appearance, or who is subjected to the power of the court under any other law." Trial Rule 8(A) notes that: "To state a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, a pleading must contain: (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for relief to which the pleader deems entitled. . . ." Typically, a person joined as an indispensable party under Trial Rule 19 or intervening under Trial Rule 24 would file a pleading to assert their claim if any, i.e., an answer, counterclaim, and/or a cross-claim pursuant to the trial rules. Accordingly, we conclude that, pursuant to the trial rules, Father and Grandmother were required to file a claim to assert their rights to any damages in the litigation.

custodial grandparent is also the guardian. Under the CWDS, an aunt, for example, who is the child's guardian, would not be entitled to an apportionment of damages.

[25] Here, although Father asserted his rights in an answer after the two-year time constraint expired, Grandmother has never filed a claim or even an appearance in the litigation. In fact, Mother concedes in her Reply Brief that, should Mother's appeal be dismissed, Father and Grandmother "will not have a right to maintain [Mother's] claim, and the statute of limitations will bar them from filing an independent claim of their own." Appellant's Reply Br. p. 8. Mother, however, contends that, because her complaint was timely, Father's and Grandmother's "right to an apportionment of damages arising therefrom is not subject to a statute of limitation dismissal." Appellant's Br. p. 13. Mother cites no relevant authority, including any trial rules, for this proposition.

[26] In addressing these issues, both Mother and the Girl Scouts discuss *King v. King*, 610 N.E.2d 259 (Ind. Ct. App. 1993), *trans. denied*. There, after the death of his child, the custodial parent filed a CWDS action and named the noncustodial mother as a defendant, among others. The mother's attorney entered an appearance but later withdrew. Two years and three days after the child's death, the mother's new attorney filed the mother's answer to the complaint. The answer, however, listed the wrong cause number, and the father and other defendant denied having received the answer. The father later settled the action, and the case was dismissed. The mother later filed a motion for relief from judgment, which the trial court denied.

[27] On appeal, the mother argued that the dismissal of the case was erroneous because she did not receive notice of the settlement. We held that the mother was not entitled to notice of the settlement because "she failed to timely express

an interest in the proceedings in general and in the possible damage award in particular. In short, she made no appearance." *King*, 610 N.E.2d at 262. After her first attorney withdrew his appearance, the mother did not enter a pro se appearance, have another attorney enter an appearance, file an answer, or "assert an interest in any possible wrongful death proceeds." *Id.* By the time the mother hired another attorney and filed an answer, the two-year "statute of limitations" had already expired.

[28] The mother also argued that, "because [the father] filed his claim within the two year period and because [the father] named her in that claim, [the mother] must also be considered as having timely asserted a claim." *Id.* at 263. This Court rejected that argument and held: "[The mother] did nothing even remotely suggesting she wished to share in any damages until three days after the limitation period passed. We know of no authority supporting the bald proposition that a parent or guardian automatically asserts a wrongful death claim merely by being named a defendant, and [the mother] offers no authority for the assertion." *Id.*

[29] The mother also argued that the damages subsection of the CWDS[9] required the trial court to apportion damages between the parents and that the CWDS does not specifically require a parent to file an answer. This Court also rejected that argument and held: "Neither of these propositions relieve[s] a party

---

[9] Then Indiana Code Section 34-1-1-8(h), *see now* Indiana Code Section 34-23-2-1(i).

wishing to assert either a wrongful death claim or an interest in any proceeds recovered from actually asserting the appropriate pleading in the first instance and in a timely fashion." *Id.*

> The only way [the mother] could prevail is if her misfiled answer could be deemed to have "related back" to [the father's] timely-filed claim. Again, however, we find no authority supporting the proposition, and again, [the mother] offers none. Neither do we find a compelling rationale to adopt such a rule in this case or ones like it. We note that under traditional relation-back analysis, a party's [later] pleading or amendment is examined to determine the degree to which it is logically or equitably connected to a document the party had filed earlier. Here, of course, [the mother] filed nothing prior to the expiration of the limitation period.

*Id.* (internal citations omitted).

[30] In summary, this Court held in *King* as follows:

> That a non-custodial parent must still timely assert his or her interest in any damages in order to avail himself or herself of those damages is neither unduly burdensome nor inconsistent with the statutory scheme and standard rules of pleading and practice.

> Finally, we wish to emphasize that our holding today, that a non-custodial parent must timely and affirmatively assert his or her interest in a share of any wrongful death of child damages recovered, must necessarily be limited to those situations in which the non-custodial parent has been given notice of the custodial parent's wrongful death claim. We have no occasion to address the situations in which the custodial parent maintains a wrongful death of child action but does not inform the non-

> custodial parent of the action's existence or in which the
> custodial parent does not file suit in the first instance.

*Id.* at 264 (footnotes omitted). This Court ultimately concluded that the trial court properly denied the mother's motion for relief from judgment because the mother was legally barred from recovering damages.

[31] We reach the same conclusion here. Under our trial rules, Father and Grandmother were required to assert a claim to be entitled to an apportionment of damages. Neither Father nor Grandmother asserted their claims within the CWDS's two-year time constraint, and Mother presents no relevant authority for the proposition that Father's and Grandmother's claims were timely simply because Mother's complaint was timely. Under these circumstances, we conclude that the trial court properly dismissed Father and Grandmother.

## Conclusion

[32] The trial court did not abuse its discretion by granting the Girl Scouts' motions to dismiss Father and Grandmother. Accordingly, we affirm.

[33] Affirmed.

Pyle, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Gabriel A. Hawkins
Cohen & Malad, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE – GIRL SCOUTS OF SOUTHWEST INDIANA, INC.

Adam S. Glass
Danny E. Glass
Fine & Hatfield
Evansville, Indiana